27 C.C.P.A. (Patents)

## In re MATTISON.
### Patent Appeals No. 4382.

Court of Customs and Patent Appeals.

April 8, 1940.

George M. Dowe, of New York City (Frank W. Dahn, of Washington, D. C., of counsel), for appellant.

Howard S. Miller, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

In this case the applicant appealed from a decision of the Board of Appeals of the United States Patent Office affirming that of the examiner denying patentability, in view of prior art cited, of the two claims in his application relating to mattresses for beds upon which people sleep. The claims read:

"12. A mattress comprising a spring structure composed essentially of a multiplicity of upright spiral springs, means connecting the top coils of all of said springs both laterally and longitudinally into a firm but flexible surface net work which is relatively non-extensible laterally, said springs being so graduated in resistance to vertical displacement in successive longitudinal sections of said structure as to support an adult of normal weight and build in approximately a level position throughout his length but yielding vertically under his weight to a sufficient degree for comfort while said connections between the springs afford a laterally firm surface on which he can turn easily.

"13. An inner spring mattress comprising a multiplicity of upright spiral springs, the spring structure of such mattress being divided into head, middle and foot sections, the middle section being designed to support the midsection of the body including the hips, the resistance of the springs in said section being approximately twice as great for a given vertical displacement as that of the springs in the head section, the foot section being adapted to support a somewhat lighter load per unit of top area than the head section with the same degree of displacement, said springs being sufficiently yieldable for comfort, and means connecting the top coils of all of said springs both laterally and longitudinally into a firm but flexible net work which is relatively non-extensible laterally thereby providing a firm surface on which the sleeper may easily turn over."

Eight references were cited, to wit: Kendrick, 75,926, March 24, 1868; Schapker, 215,482, May 20, 1879; Jones, 276,421, April 24, 1883; Tuttle, 348,539, August 31, 1886; Wyman, 579,669, March 30, 1897; Grapp, 1,497,013, June 10, 1924; Munn, 1,866,664, July 12, 1932; Hilton (Br.), 427,-772, April 30, 1935.

In the brief on behalf of appellant the following statement, descriptive of the alleged invention, is made: "The invention relates to inner spring mattresses and its primary object is to provide a spring mattress so constructed that it will support the body in a level position, thereby to maintain in recumbency that posture which is recognized as most conducive to the proper functioning of the vital organs; and to provide a spring mattress that will enable the occupant easily to turn over or to change position."

The Primary Examiner describes the structure in the following language (the numerals indicating structural elements being omitted):

"The springs * * * are arranged in rows and connected by transverse stays * * * and clips * * * to each other and by clips * * * to a margin frame * * * so that while the springs may yield downwardly the spring body will be relatively non-expansible laterally.

"The springs are not all of equal stiffness but the spring body is divided into transverse bands or zones of springs the springs in any zone being of the same stiffness but differing from zone to zone.

"The intermediate zone * * * is of relatively stiff springs, the head zone * * * is of weaker springs and the foot zone * * * is of still weaker springs.

"In this way the resistance to depression is substantially proportioned to the weight to be supported and consequently the body is supported in a horizontal configuration as though it rested on the floor as distinguished from other mattresses of uniformly strong springs which would support the body so that heavier parts would sag somewhat below lighter parts."

So far as the transverse stays and clips are concerned, they, or their equivalents, are shown in the prior art as, for example, in the patent to Munn. Munn also shows clips attached to a margin frame. The drawings of the application show forms of stays and clips somewhat different from those shown in the drawings of the patent, but the appealed claims do not define such structural differences in a manner indicating any patentable distinction.

So, in the final analysis, appellant's claim of invention rests upon the fact that his structure is divided into three zones, the head, middle, and foot sections, the springs in the middle section having a strength which renders their resistance much greater than that of those in the head section, the latter, in turn, having a resistance greater than that of those in the foot section.

The advantages claimed for this arrangement respecting comfort, health, ease in turning and shifting the body during sleep, etc., are depicted in the specification, and the same may be conceded although, as is suggested by the examiner, different persons are wont to use different types of mattresses or other forms of bedding. That found comfortable by one person may not prove so to another.

■ Conceding the advantages, however, it does not follow that appellant's structure is patentably novel, which is the test that must be applied.

■ Both the examiner and the board discussed most of the references and pointed out features present in them that correspond to features of the appealed claims. Concerning the Grapp patent, the board said: "Grapp discloses an inner spring mattress divided into three zones crosswise of the mattress produced by employing springs of relatively different degrees of stiffness in the respective zones. Grapp apparently considered that it was desirable to have one end of the mattress, preferably that under the head and trunk portion of the body, of stiffer spring, that under the hips of intermediate stiffness and that under the feet of less stiffness. Grapp is regarded as illustrating the principle of applicant's mattress but differing only in the matter of what was regarded as a preferable matter of choice in respect to the zones of the body."

It was also pointed out that Schapker "gives the central portion of the spring and that of the mattress generally more resistance then the head and foot portions."

With respect to the Kendrick and Wyman patents the board said: "Kendrick and Wyman clearly disclose three longitudinal zones of spring and slat structure with the middle zone of stiffer resistance then the two end zones resembling applicant's structure. While each of these patents discloses a spring structure that may be turned up at one end to resemble a chair, still they are to be employed also in flat condition in which case applicant's limitation as to three zones and relative resistance of the same is fully anticipated."

We do not deem it necessary to analyze all of the references in detail. In the brief on behalf of appellant an analysis is made of the most pertinent of them, and distinctions between features of those so analyzed and the structure of appellant are pointed out. It is true that there are distinctions as appellant contends, but, in view of the definiteness with which the principle involved in appellant's structure is shown and described in the prior art, we are unable to conclude that his arrangement involved invention.

A matter quite strongly emphasized by appellant is that of the commercial success which has been attained in the marketing of his mattresses. The record sup-

ports the contention as to commercial success, and it was considered by the board, which said: "We have noted applicant's showing of commercial success, but commercial success may depend upon many factors other than invention. The rule in respect to patentability is that commercial success becomes important only where a matter of patentability might be of marginal nature—In re Kluter, 1938 C.D. 144; Id., Cust. & Pat.App., 92 F.2d 906."

In various decisions different courts have indicated that commercial success is an element which, under some conditions, may be considered in connection with patentability, but it is merely a circumstance proper to be looked to in connection with other circumstances and facts and cannot by itself be taken as proving patentable novelty. So many different things, such as proper advertising and the like, may contribute to commercial success, that it is always difficult to assert positively that such success is due alone to novelty, and even if there be novelty it does not follow that it is patentable novelty.

Upon the whole record we do not find that the board committed error and its decision is affirmed.

Affirmed.